Filed 8/19/24  P. v. Alvarez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083199 |
| v. | (Super.Ct.No. SWF009113) |
| VICENTE ARRAIGA ALVAREZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Vicente Arraiga Alvarez, in pro. per.; Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Vicente Arraiga Alvarez filed a petition for resentencing pursuant to Penal Code section 1172.6,[1] which the court denied.  On appeal, counsel has

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

filed a brief under the authority of *People v. Delgadillo* (2022) 14 Cal.5th 216

(*Delgadillo*), setting forth a statement of facts, a statement of the case, and requesting that

we exercise our discretion to independently review the record for error.

This court offered defendant the opportunity to file a personal supplemental brief,

which he has done.[2]  Defendant contends that the court erred in determining he failed to

make a prima facie showing, that the court erred in denying his petition because the court

did not understand the governing law, and that the trial court's instructions allowed the

jury to improperly impute malice to defendant.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[3]

In 2004, defendant entered a store where he told the cashier to give him all the

money "'that's in there.'"  The cashier refused.  Defendant threatened the cashier and

said he would return.  (*Alvarez*, *supra*, E039133.)

---

[2]  "If the defendant . . . files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion."  (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.)

[3]  We take judicial notice of this court's opinion from defendant's appeal from the judgment (*People v. Alvarez* (Mar. 29, 2007, E039133) [nonpub. opn.] (*Alvarez*)), of which the People requested the court below take judicial notice.  (Evid. Code, § 459.) Although we recount the facts as recited in *Alvarez*, we are cognizant that Assembly Bill No. 200 (2021-2022 Reg. Sess.) limited the use of prior appellate opinions by trial judges ruling on section 1172.6 petitions in most instances to "'the procedural history of the case recited.' [Citation.]"  (*People v. Clements* (2022) 75 Cal.App.5th 276, 292; accord, *People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. omitted ["If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage."]; accord, *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9.)

Defendant left the store. He went to his car where he retrieved a loaded .22-caliber rifle. The cashier and another store employee walked to the parking lot to obtain defendant's vehicle's license plate number. Defendant fired a round at the ground. The employees ran into the store to take refuge. (*Alvarez*, *supra*, E039133.)

Defendant walked toward the store and reloaded the rifle. By taking the gun, defendant thought it would be easier to obtain money. (*Alvarez*, *supra*, E039133.)

When he reached the front of the store, the doors did not open. Defendant fired a round into the first of two sets of glass doors, shattering them. While defendant was in the vestibule between the two sets of doors, the cashier saw defendant point the rifle at her. Defendant followed her movement with the rifle; she believed he was trying to kill her. (*Alvarez*, *supra*, E039133.)

Defendant reloaded and tried to shoot out the second set of doors, but his gun jammed. He then left the store and got into his car; thereafter, officers captured defendant and took him into custody. (*Alvarez*, *supra*, E039133.)

By information filed March 22, 2005, the People charged defendant with two counts of willful, deliberate, and premeditated attempted murder (§§ 664, 187, counts 1 & 3); resisting arrest (§ 69, count 2); attempted robbery (§ 664, 211, count 4); and burglary (§ 459, count 5). With respect to the attempted murder charges, the People alleged defendant personally discharged a firearm. (12022.53, subd. (c).)

The court instructed the jury with CALJIC No. 1.22, "The words 'malice' and 'maliciously' mean a wish to vex, annoy or injure another person, or an intent to do a

3

wrongful act." The court also instructed the jury with CALJIC No. 8.66.1, "A person who primarily intends to kill one person may also concurrently intend to kill other persons within a particular zone of risk. The intent is concurrent when the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to kill the primary victim by killing everyone in that victim's vicinity. [¶] Whether a perpetrator actually intended to kill the victim, either as a primary target or as someone within a [zone of risk] is an issue to be decided by you." The court further instructed the jury with CALJIC No. 8.11, which necessitates that the requisite malice to find a defendant guilty of attempted murder may be either express or implied, and that the court may find the latter where "[t]he natural consequences of the act are dangerous to human life."

On September 8, 2005, a jury found defendant guilty of a single count of willful, deliberate, and premeditated attempted murder (Pen. Code §§ 664, 187, count 1); resisting arrest (§ 69, count 2); the lesser offense of assault with a deadly weapon (§ 245, subd. (a)(2), count 3); second degree attempted robbery (§ 664, 211, count 4); and burglary (§ 459, count 5). With respect to the attempted murder offense, the jury found true the allegation that defendant personally discharged a firearm. (§ 12022.53, subd. (c).) The court sentenced defendant to state prison for 29 years to life. (*Alvarez*, *supra*, E039133.)

Defendant appealed.  This court affirmed the judgment but directed the trial court to stay the sentence on the burglary offense pursuant to section 654.  (*Alvarez*, *supra*, E039133.)

On November 30, 2022, defendant submitted a form petition for resentencing pursuant to section 1172.6.  On May 4, 2023, appointed counsel filed a prima facie brief for resentencing pursuant to section 1172.6.  On May 8, 2023, the People filed a request for judicial notice of the jury instructions, the case files, and this court's opinion in *Alvarez*, *supra*, E039133.  On July 31, 2023, defense counsel filed a "reply," to which he attached a copy of the jury instructions given by the court in defendant's trial.

At a hearing on February 2, 2024, defense counsel noted that defendant "went into a bank inside the store; he fired some shots.  And there were two employees, I don't know if they were tellers, and they were behind windows.  So both victims were charged as victims of the attempted murder."  Defense counsel contended the court improperly instructed the jury with the kill zone theory, on implied malice, and with CALJIC NO. 1.22.  Specifically, defense counsel complained that the trial court "said that attempt[ed] murder can be proved by express malice or implied.  So that's wrong.  You cannot prove an attempted murder with implied malice.  This case law says that it must be express."  The jury "imputed the malice for his using a gun, which is a specific intent to use the firearm.  And they imputed that on the attempt[ed] murder."

The court observed, "Now, what doesn't make sense about your entire argument, other than when you finally got to the word 'imputation,' is that you were complaining

5

that there was instructional error that has nothing to do with Senate Bill 1437 and as it was codified by [section] 1172.6 . . . and the changes to [sections] 187, 188, and 189." The court asked defense counsel which instructions allowed the jury to impute malice to defendant.

Defense counsel responded that by instructing the jury with the kill zone instruction, the jury could have imputed malice to defendant as to victim 2, by defendant's actual malice as to victim 1 simply by victim 2's presence within the kill zone. Defense counsel contended this "error' was compounded by the court's "instructional error [in] putting a wrong definition of malice or improperly using implied malice or express malice for an attempted murder, when you have those kinds of errors I think they dovetail into [section ] 1172.6." "The Judge improperly included implied malice as a way to get to the guilty verdict for attempt[ed] murder, and that's wrong. Implied malice is what we're talking about, because with [section] 1172.6 the Court is correct. The new bill doesn't address that exactly, but generally it's about implied malice, and that's the error that the Court made here."

The court replied, "No. The bill has nothing to do with implied malice. The . . . cases are very clear on that point. The bill has everything to do with imputed malice, which is a distinct legal theory from implied malice."

The People responded, "The instruction given to the jury in this case doesn't allow for the imputation of malice to be put on another person. That's the point of the law. That's what we're here for, not to discuss kill zone, which is still viable. Implied malice

6

is still viable." "[D]efendant . . . shot at a Wal-Mart. It's not an aiding and abetting case. The jury instructions made that abundantly clear. There were no aiding and abetting instructions given. Without any aiding and abetting instructions given at all, he is not eligible, period."

The court ruled that defendant could not challenge any instructional error because the matter was not on appeal from the judgment. The court reviewed the malice instruction noting, "there's nothing about this instruction that would allow somebody who was not the primary actor to be found to have malice. This is all primary actor analyses." In reviewing the kill zone instruction, the court noted, "This instruction expressly requires the jury to find that everyone within the zone of risk that they are going to assign murder culpability for, that the defendant had a specific intent to kill." "There were no aiding and abetting instructions given. There were no felony murder instructions given." "[T]here is nothing about the malice instruction that allows malice to be imputed to this defendant by virtue of the acts of some other person." "There is no instruction that I could see that was given in this case, after reviewing them, that would have allowed the jury to impute malice in a manner that is no longer authorized by law." The court denied the petition.

## II. DISCUSSION

Defendant contends that the court erred in determining he failed to make a prima facie showing, that the court erred in denying his petition because the court did not

understand the governing law, and that the trial court's instructions allowed the jury to improperly impute malice to defendant.[4]  We disagree.

"The Legislature enacted Senate Bill [No.] 1437 [(Sen. Bill 1437)]'to more equitably sentence offenders in accordance with their involvement in homicides.'  (Stats. 2018, ch. 1015, § 1(b).)  The Legislature recognized, 'It is a bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability.'  [Citation.]  With this purpose in mind, Senate Bill 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]"  (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

"Effective January 1, 2022, section 1172.6 was amended by Senate Bill No. 775 . . . (Senate Bill 775)."  (*People v. Medrano* (2024) 98 Cal.App.5th 1254, 1260.)  "Senate Bill 775 [partially] amended section 1172.6, subdivision (a) to expand eligibility for resentencing to persons convicted of 'attempted murder under the natural and probable consequences doctrine.'"  (*Id.* at p. 1261.)

"[A]fter the enactment of Senate Bill 1437, a defendant cannot be convicted of murder based on the doctrine of natural and probable consequences, even with a showing

---

**4**  We note that defendant challenged the court's instructions of the jury with CALJIC Nos. 1.22 and 8.11 on appeal from the judgment.  This court found that the court erred in giving both instructions together but that any error was harmless.  (*Alvarez*, *supra*, E039133.)

of malice aforethought.  [Citation.]  It is an invalid theory." (*Curiel*, *supra*, 15 Cal.5th at p. 462.)  "Senate Bill 1437's operative language . . . eliminates natural and probable consequences liability . . . ." (*Ibid.*)  It provides "the opportunity to petition for relief to defendants who were convicted under an invalid theory like the natural and probable consequences doctrine at issue here.  [Citation.]" (*Id*. at p. 463.)

"'"'[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.'"'  [Citation.]  Consequently, '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.'  [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 460.)

"[T]he question is not whether it is likely a defendant could have felt and acted in such a [sufficiently culpable] way, but whether the court's jury instructions foreclose that possibility *as a matter of law*.  Only in the latter scenario would a trial court be permitted to deny a defendant's section 1172.6 petition at the prima facie stage.  [Citation.]  In other words, only in that scenario would the record of conviction 'establish conclusively that the defendant is ineligible for relief.'  [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 470.)  "'"'This is a purely legal conclusion, which we review de novo.'"'  [Citation.]" (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)  Thus, where the record of conviction reflects that the defendant was not convicted under any theory of imputed malice, no evidentiary hearing is required. (*People v. Mares* (2024) 99 Cal.App.5th 1158, 1165-1166.)

Here, the record reflects that the trial court did not instruct on, and the jury therefore did not find defendant guilty of, attempted murder under any theory of imputed malice. The court gave no instructions on felony murder, the natural and probable consequences doctrine, aiding and abetting, or any other theory in which malice could have been imputed to defendant based on his participation in another crime. The jury instructions do not identify any underlying target offense. Thus, defendant is per se ineligible for resentencing.

Contrary to defendant's contention on appeal and defense counsel's argument below, "implied malice murder remains a valid form of murder liability" (*People v. Vizcarra* (2022) 84 Cal.App.5th 377, 391; accord, *People v. Werntz* (2023) 90 Cal.App.5th 1093, 1112, review granted Aug. 9, 2023, S280278; *People v. Flores* (2023) 96 Cal.App.5th 1164, 1171-1172.) Thus, the court below understood and correctly applied the law.

Likewise, as the court below acknowledged, a section 1172.6 petition is not the proper forum for challenging jury instructions from a long since final judgment, particularly where those challenges have previously been resolved adversely to defendant. The court properly denied defendant's petition for resentencing.

## III.  DISPOSITION

The order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

J.

We concur:

RAMIREZ

P. J.

FIELDS

J.